UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALLISON OTTESEN, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>HI-TECH PHARMACEUTICALS, INC.,<br><br>             Defendant. | Case No. 19-cv-07271-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 99 |

Before the Court is Defendant Hi-Tech Pharmaceutical's ("Hi-Tech") motion to dismiss Plaintiffs' first amended complaint. ECF No. 99. The Court will grant the motion in part and deny it in part.

# I.    BACKGROUND

Because the facts are well-known to the parties and the Court has summarized Plaintiffs' allegations in detail in its prior orders, ECF Nos. 41, 70, the Court will not elaborate them here. In sum, Plaintiffs Allison Ottesen, Sean Allen, and Lauren Accardi bring this putative class action against Hi-Tech for allegedly manufacturing, distributing, and selling supplements containing the ingredient DMHA,[1] which is allegedly "illegal and not generally recognized as safe." ECF No. 79 ¶ 2 ("FAC"). Plaintiffs bring claims for breach of implied warranty of merchantability, fraud, and unjust enrichment on behalf of a nationwide class; violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, on behalf of a California subclass; and

---

[1] The complaint uses "DMHA" as shorthand for the substance also called, variously, 2-Aminoisehptane HCI, 1,5-DMHA, 2-amino-6-methylheptane, 2-amino-5methylheptane, 1,5-Dimethylhexylamine, 2-Isooctyl amine, and Octodrine. ECF No. 1 at 8–9.

United States District Court
Northern District of California

violation of New Yorks General Business Law Section 349 on behalf of a New York subclass. *Id.* at 17–25. They seek injunctive relief, compensatory damages, punitive damages, and restitution. *Id.* at 26.

On April 10, 2019, the FDA sent a warning letter to Hi-Tech "stat[ing] that DMHA 'is not generally recognized as safe under its conditions for use in Hi-Tech's dietary supplement products,'" and that 'dietary supplements containing DMHA as a new dietary ingredient are adulterated . . . because there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury.'" *Id.* ¶ 7 (ellipsis in original).

On November 20, 2020, the Court stayed the case on primary jurisdiction grounds, "pending a determination by the FDA regarding the classification of DMHA." ECF No. 56 at 6. Nearly three years later, Plaintiffs moved to lift the stay following an FDA website update that stated, in part, that "[a]fter further research and consideration, [the] FDA concluded that DMHA is an unsafe food additive" and "adulterated under the FD&C Act."[2] ECF No. 66 (quoting FDA, *DMHA in Dietary Supplements* (Mar. 6, 2023), https://www.fda.gov/food/dietary-supplement-ingredient-directory/dmha-dietary-supplements [https://perma.cc/BN87-K7JX]). On October 17, 2023, the Court lifted the stay. ECF No. 70. The Court concluded:

> [T]he FDA website states that the agency has "concluded that DMHA is an unsafe food additive," and that it "considers dietary supplements containing DMHA to be adulterated." DMHA in Dietary Supplements. Nothing about this language appears tentative, nor—unlike the last time this question came before the Court—is there any indication in the record that the FDA's "decision-making is still ongoing." ECF No. 56 at 5. In the absence of any such evidence, the Court concludes that there no longer is a basis for a stay.

ECF No. 70 at 2–3. Following this Court's order lifting the stay, Hi-Tech moved the Court to certify its October 17, 2023 order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and enter a stay of all proceedings pending that appeal. The Court granted Hi-Tech's motion and stayed the case while its order certifying interlocutory appeal was reviewed by the Ninth Circuit.

---

[2] The FD&C Act refers to the Federal Food, Drug, and Cosmetic Act.

1   ECF No. 90.  Two months later, the Ninth Circuit denied Hi-Tech's request to appeal.  ECF

2   No. 91.  Hi-Tech then filed the renewed motion to dismiss that is now before the Court.  ECF No.

3   99.

## II.      JURISDICTION

The Court has jurisdiction over this case as a class action in which a member of the class

of plaintiffs is a citizen of a state different from the defendant and the matter in controversy

exceeds the sum of $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d).

## III.     LEGAL STANDARD

### A.      Federal Rule of Civil Procedure 12(b)(2)

When a defendant objects to the Court's personal jurisdiction over it pursuant to Federal

Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is

proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Absent an evidentiary

hearing, however, the plaintiff need only make a prima facie showing of personal jurisdiction.  *Id.*

"Uncontroverted allegations in the plaintiff's complaint must be taken as true", and "[c]onflicts

between the parties over statements contained in affidavits must be resolved in the plaintiff's

favor." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.

2004)).  "Where, as here, there is no applicable federal statute governing personal jurisdiction, the

district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374

F.3d at 800.  "Because California's long-arm jurisdictional statute is coextensive with federal due

process requirements, the jurisdictional analyses under state law and federal due process are the

same." *Id.* at 800–01.

### B.      Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Dismissal under Rule 12(b)(6) is

appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th

Cir. 2008).  A complaint need not contain detailed factual allegations, but facts pleaded by a

plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation marks and citation omitted).

Because several of Plaintiffs' causes of action—including their UCL and CLRA claims— are grounded in fraud, the complaint must also satisfy Rule 9(b), which requires that "identify[ing] the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

"Whether a business practice is deceptive is generally a question of fact that requires weighing of evidence from both sides." *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1014 (N.D. Cal. 2018) (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007)). "For that reason, courts grant motions to dismiss under the reasonable consumer test only in rare situations in which the facts alleged in the complaint 'compel the conclusion as a matter of law that consumers are not likely to be deceived.'" *Id.* (quoting *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226–27 (2013)). However, Plaintiffs must show "more than a mere possibility that [Hi-Tech's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in

4

the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508).

## IV.     DISCUSSION

### A.     Personal Jurisdiction

Hi-Tech argues that this Court does not have personal jurisdiction over the claims asserted by the New York Plaintiffs Accardi and Allen or on behalf of the putative non-California class members.  Plaintiffs respond that as a threshold matter, Hi-Tech failed to raise this defense in its initial motion to dismiss, ECF No. 16, and therefore has waived it.  ECF No. 99 at 19.  Hi-Tech counters that Plaintiffs have suffered no prejudice because the Court stayed the case following Hi-Tech's initial motion to dismiss and administratively terminated the motion without deciding it, and there is no indication that Hi-Tech raised its personal jurisdiction argument in its subsequent motion to dismiss to delay the case or obtain any unfair advantage.  ECF No. 103 at 17–18.

Rule 12(g)(2) of the Federal Rules of Civil Procedure provides that, with exceptions not applicable here, a party "must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  However, Rule 12(g)(2) must be read "in light of the general policy of the Federal Rules of Civil Procedure, expressed in Rule 1," which "directs that the Federal Rules 'be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'"  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (quoting Fed. R. Civ. P. 1), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019).  "Denying late-filed Rule 12(b)(6) motions . . . can produce unnecessary and costly delays, contrary to the direction of Rule 1," *id.*, and "courts faced with a successive motion [to dismiss that raises arguments that could have been raised in a prior motion] often exercise their discretion to consider the new arguments in the interests of judicial economy," *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011 WL 2690437, at *2 (N.D. Cal. July 8, 2011).  The Court will exercise its discretion to do so here.

#### 1.     Non-California Named Plaintiffs

"Personal jurisdiction must exist for each claim asserted against a defendant."  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted).

1    Since the Supreme Court's "seminal decision in *International Shoe*," courts "have recognized two

2    types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific'

3    (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct.

4    1773, 1779–80 (2017) (citation omitted).  "[A] court may assert pendent personal jurisdiction over

5    a defendant with respect to a claim for which there is no independent basis of personal jurisdiction

6    so long as it arises out of a common nucleus of operative facts with a claim in the same suit over

7    which the court does have personal jurisdiction." *Action Embroidery*, 368 F.3d at 1180 (collecting

8    cases).

9        Here, the parties do not dispute that the Court has jurisdiction over Ottesen—the named

10   California plaintiff.  The question is whether the Court may exercise pendent jurisdiction over

11   Accardi and Allen's claims in light of the Supreme Court's decision in *Bristol-Myers*.  In *Bristol-*

12   *Myers*, plaintiffs from across the country sued the Bristol-Myers Squibb Company in California

13   state court alleging that its drug was harmful to their health.  137 S. Ct. at 1777–78.  The

14   Supreme Court found that California courts could not exercise specific jurisdiction over the out-

15   of-state plaintiffs' claim because the claims did not arise in California or out of the companies'

16   activities in California.  *Id.* at 1780–84.  Specific jurisdiction, the Supreme Court explained,

17   requires an "affiliation between the forum and the underlying controversy, principally an activity

18   or an occurrence that takes place in the forum state."  *Id.* at 1780 (alteration, quotation, and

19   citation omitted).  In reaching this decision, the Supreme Court left open the question of "whether

20   the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by

21   a federal court."  *Id.* at 1783–84 (citation omitted).

22       Although the Ninth Circuit has not yet spoken on this issue, the "overwhelming majority of

23   federal courts," including courts in this district, "have held that *Bristol-Myers* applies to claims

24   brought by named plaintiffs in class actions" when federal courts are sitting in diversity.  *Sloan v.*

25   *Gen. Motors LLC*, No. 16-cv-07244-EMC, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019); *see*

26   *La Fosse v. Sanderson Farms, Inc.*, No. 19-cv-06570-RS, 2020 WL 3617786, at *4 (N.D. Cal.

27   July 2, 2020) (granting 12(b)(2) motion and dismissing all claims brought by the non-California

28   plaintiffs on this basis); *see also* Daniel Wilf-Townsend, *Did* Bristol-Myers Squibb *Kill the*

United States District Court
Northern District of California

6

*Nationwide Class Action?*, 129 Yale L.J. Forum 205, 226 (2019) ("[T]here is consensus that *BMS*'s personal-jurisdiction holding applies to the named plaintiffs in a class action[.]").

Plaintiffs argue that the New York named Plaintiffs' claims arise out of the same common nucleus of fact as Ottesen's claim, so "severing their claims would be contrary to judicial economy." ECF No. 102 at 20. Clearly so. But the Supreme Court rejected virtually identical arguments in *Bristol-Myers*. *See Bristol-Myers*, 137 S. Ct. at 1780–81 (holding that the Due Process Clause can divest a court of jurisdiction "even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; [and] even if the forum State is the most convenient location for litigation" (citation and internal quotation omitted)). The Court is thus persuaded by "the weight of authority [that] weighs heavily against the exercise of pendent jurisdiction in a diversity case such as this one." *King v. Bumble Trading, Inc.*, No. 18-cv-06868-NC, 2020 WL 663741, at *6 (N.D. Cal. Feb. 11, 2020). Accordingly, the Court will not assert pendent jurisdiction over Accardi and Allen's claims because these claims arise from out-of-state activities with no connection to California. The Court thus dismisses Accardi and Allen's claims on behalf of themselves and the New York subclass under New York General Business Law § 349.

### 2.    Unnamed Non-California Putative Class Members

Hi-Tech further argues that the Court should dismiss the claims of unnamed members of the nationwide class. Hi-Tech relies on *Carpenter v. Petsmart, Inc.*, 441 F. Supp. 3d 1028 (S.D. Cal. 2020), which held that *Bristol-Myers* barred the claims of unnamed, non-resident plaintiffs in a putative nationwide class action. 441 F. Supp. 2d at 1037.

While the Ninth Circuit has not directly addressed the issue, it has found that motions to dismiss unnamed plaintiffs for lack of personal jurisdiction, prior to class certification, are premature. *Moser v. Benfytt, Inc.*, 8 F.4th 872, 878 (9th Cir. 2021). This is "because putative class members 'are *always* treated as nonparties' and 'become parties to an action – and thus subject to dismissal – only after class certification.'" *Id.* (quoting *Molock v. Whole Foods Mkt. Grp.*, 952 F.3d 293 (D.C. Cir. 2020) (emphasis in original)); *see also Bugarin v. All Nippon Airways Co.*,

1    513 F. Supp. 3d 1172, 1188 (N.D. Cal. 2021).  Accordingly, Hi-Tech's request to dismiss the

2    claims on behalf of the nationwide class for lack of personal jurisdiction is denied as premature.

3        **B.    Primary Jurisdiction[3]**

4        The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a

5    complaint without prejudice pending the resolution of an issue within the special competence of

6    an administrative agency" if the court "determines that an otherwise cognizable claim implicates

7    technical and policy questions that should be addressed in the first instance by the agency with

8    regulatory authority over the relevant industry rather than by the judicial branch."  *Clark v. Time*

9    *Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  The doctrine is "prudential" and does not

10   "implicate[] the subject matter jurisdiction of the federal courts."  *Syntek Semiconductor Co. v.*

11   *Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).  In determining whether to apply the

12   primary jurisdiction doctrine, courts have generally considered the following factors: "(1) the need

13   to resolve an issue that (2) has been placed by Congress within the jurisdiction of an

14   administrative body having regulatory authority (3) pursuant to a statute that subjects an industry

15   or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in

16   administration."  *Id.* at 781 (citing *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362

17   (9th Cir. 1987)).  The parties do not contest that the FDA has regulatory authority over the food

18   industry or that DMHA is subject to regulation by the FDA under the Dietary Supplement Health

19   and Education Act.

20       Hi-Tech argues that Ottesen's claims are barred by the primary jurisdiction doctrine if the

21   FDA has not yet taken final agency action in declaring DMHA to be adulterated.  Specifically, Hi-

22   Tech contends that neither the FDA's website update nor the warning letter it issued to Hi-Tech

23   constitutes final agency action.  ECF No. 99 at 10–12.  But whether the FDA has taken final

24   agency action is not the controlling inquiry as to whether the Court should apply the primary

25   jurisdiction doctrine.

26       Instead, the primary jurisdiction doctrine is a prudential one, and efficiency—a guiding

27

28   ───────────────
     [3] The remainder of this order will address only Ottesen's claims as the remaining named plaintiff.

United States District Court
Northern District of California

1    principle underlying the doctrine—counsels in favor of proceeding with litigation.  *See Reid*, 780

2    F.3d at 967 (explaining that the "'deciding factor' in determining whether the primary jurisdiction

3    doctrine should apply is 'efficiency'" and finding that it would be more efficient not to apply the

4    primary jurisdiction doctrine when "the FDA has made considered judgments on the legal issues

5    in this case") (quoting *Rhoades v. Avon Prods., Inc.,* 504 F.3d 1151, 1165 (9th Cir.2007)).  As the

6    Court previously found in its October 17, 2023, order, the FDA website states that the agency has

7    "concluded that DMHA is an unsafe food additive," and that it "considers dietary supplements

8    containing DMHA to be adulterated."  ECF No. 70 at 3 (quoting *DMHA in Dietary Supplements*).

9    Unlike when the Court originally stayed this case, nothing about this language appears tentative,

10   nor is there any indication in the record that the FDA's "decision-making is still ongoing."  ECF

11   No. 56 at 5.  This case is thus now more similarly situated to *Reid v. Johnson & Johnson, Inc.*, in

12   which the Ninth Circuit affirmed denial of a motion to stay on primary jurisdiction grounds where

13   the FDA had issued warning letters regarding "No Trans Fat" statements and "there [was] no

14   indication that the FDA [was] contemplating authorizing [such] statements" or "signs [that the

15   FDA was] backing away from its determination" regarding the question at issue.  780 F.3d 952,

16   966–67 & n.9 (9th Cir. 2015).  Like in *Reid*, Plaintiffs' claims "present no issues of first

17   impression, as the FDA has already addressed the substantive issues raised here."  *Id.* at 966.  In

18   the absence of any evidence that the FDA will make any further determinations, the Court

19   concludes that there is no reason for the primary jurisdiction doctrine to apply.

20          **C.    Preemption**

21          The Supremacy Clause of the Constitution enables Congress to enact legislation that

22   preempts state law.  *See Gibbons v. Ogden*, 22 U.S. 1, 211 (1824).  "Federal preemption occurs

23   when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually

24   conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is

25   reasonable to conclude that Congress left no room for state regulation in that field."  *Chae v. SLM*

26   *Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (citation omitted).  In determining whether certain claims

27   are preempted, the Court heeds the long-established presumption against preemption.  *See*

28   *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

United States District Court
Northern District of California

9

1

### 1.      Express Preemption

2      Most relevant here, the FDCA forbids: (i) the misbranding of supplements by way of false

3  or misleading labeling, 21 U.S.C. § 343; and (ii) the adulteration of food or dietary supplements,

4  including containing a "new dietary ingredient for which there is inadequate information to

5  provide reasonable assurance that such ingredient does not present a significant or unreasonable

6  risk of illness or injury," 21 U.S.C. § 342(f)(1)(b).

7      "To avoid a patchwork quilt of conflicting state labeling laws, the [FDCA] includes

8  a preemption provision that establishes a national and uniform standard for certain labeling

9  statements." *Greenberg v. Target Corp.*, 985 F.3d 650, 655 (9th Cir. 2021).  The FDCA preempts

10  only those state law claims that impose requirements "not identical to" its own.  *Id.*; *see also* 21

11  U.S.C. § 343–1(a).  Congress thus limited preemption to state laws that "impose more or

12  inconsistent burdens on manufacturers than the burdens imposed by the FDCA."  *Krommenhock v.*

13  *Post Foods, LLC*, 255 F. Supp. 3d 938, 951 (N.D. Cal. 2017) (quoting *Gallagher v. Bayer AG*, No.

14  14-cv-04601-WHO, 2015 WL 1056480, at *4 (N.D. Cal. Mar. 10, 2015)).

15      Ottesen brings her claims under California's Sherman Law, which imposes requirements

16  identical to those in the FDCA.  *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 954 (N.D.

17  Cal. 2013) (finding that "through the Sherman Law, California has expressly adopted the federal

18  labeling requirements as its own").  Hi-Tech does not appear to argue that Ottesen's claims are

19  expressly preempted by the FDCA.  But to the extent that it does, the Court finds that her claims

20  are not expressly preempted because they are based on an alleged violation of FDA regulations

21  and therefore require "nothing more or less than what the FDCA already requires."  *Guerra v.*

22  *KIND, LLC*, No. 22-cv-06654-RS, 2023 WL 3436093, at *7 (N.D. Cal. May 11, 2023).  Similarly,

23  Hi-Tech's submission of the Second Circuit's decision in *Jackson-Mau v. Walgreen Co.*, No. 23-

24  642, 115 F.4th 121 (2d Cir. 2024), ECF No. 106, is unpersuasive because that case dealt with state

25  laws that *differed* from FDCA requirements.  *See Jackson-Mau*, 115 F.4th at 132 (finding that

26  "state law cannot be used to impose a 'different' or 'additional' naming requirement).

27      ### 2.      Implied Preemption

28      Even if a state law is not expressly preempted by the FDCA, it may still be impliedly

United States District Court
Northern District of California

10

preempted if it conflicts with the FDCA's provisions. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001). There is no private right of action under the FDCA. *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013). Rather, "[t]he FDA is responsible for investigating potential violations of the FDCA." *Id.* Thus, state claims that "exist solely by virtue of the FDCA . . . requirements," *Buckman*, 531 U.S. at 348, are impliedly preempted as they "conflict[ ] with the FDCA's enforcement scheme," which entrusts enforcement to the FDA. *Perez*, 711 F.3d 9 at 1119.

However, as recognized by the Ninth Circuit, "*Buckman* . . . left the door open to state-law claims 'parallel' to federal requirements." *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015). To avoid preemption, "[t]he plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted [ ]) but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez*, 711 F.3d at 1120 (citation omitted) (emphasis in original). Ottesen's claims satisfy these requirements. As this Court has explained, the Sherman Law "exists independently . . . and violating its requirements would be a valid state cause of action even if the [FDCA] ceased to exist." *Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 574 (N.D. Cal. 2013). Unlike in *Buckman*, where the plaintiffs' claims depended on federal law, Ottesen's claims do "not depend on the [FDCA], except in the sense that the Sherman Law mirrors the requirements of the FDCA." *Id.* Accordingly, Ottesen's state law claims are not impliedly preempted. *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 845 (9th Cir. 2024) (finding that "federal law does not preempt private enforcement of the Sherman Law's labeling requirements").

Hi-Tech argues that Ottesen's state law claims are nevertheless preempted "because they would require this Court to decide issues that are reserved for the FDA." ECF No. 103 at 13. Hi-Tech cites *Nexus Pharmaceuticals, Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040 (9th Cir. 2022), as support for this argument. In *Nexus Pharmaceuticals*, the plaintiffs there claimed that drug-compounding facilities violated state statutes prohibiting the sale of drugs not approved by the FDA. *Id.* at 1044. But the FDA indicated that it "d[id] not intend to take action" against facilities that compounded drugs that were "essentially a copy" of discontinued drugs and

United States District Court
Northern District of California

that it would "issue clarifying regulations on what 'essentially a copy'" meant. *Id.* at 1050. The court thus found that the plaintiffs' claim would require determining whether the drug at issue was "essentially a copy" of a discontinued drug and qualified for an exception to FDA approval. *Id.* at 1049. Because the "plain text of the FDCA leaves that determination in the first instance to the FDA's balancing of risks and concerns in its enforcement process," the court held that the claim was impliedly preempted by the FDCA. *Id.* at 1050–51.

Here, by contrast, as the Court explained in declining to apply the primary jurisdiction doctrine, the FDA has already concluded that DMHA is an "unsafe food additive" and that "dietary supplements containing DMHA are adulterated under the FD&C Act" because "DMHA does not qualify as a dietary ingredient, is not an approved food additive, is not GRAS, and does not meet any of the other listed exceptions to the food additive definition . . . ." *DMHA in Dietary Supplements*. Unlike in *Nexus Pharmaceuticals*, the FDA has not stated that there are any forthcoming "clarifying regulations" on the status of DMHA. Instead, the FDA has indicated that it has come to a conclusive determination after thorough consideration and research. And allowing Plaintiffs' claims to proceed would be consistent with the FDA's determination and not contradict the FDA's policies. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("The preemption analysis turns on whether the challenged statements are authorized by the FDA's regulations or other pronouncements of similar legal effect.").

### D. Standing

Article III of the U.S. Constitution authorizes the judiciary to hear "cases" and "controversies." To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

Hi-Tech argues that Ottesen has failed to establish an injury-in-fact because she has only alleged a "non-specific economic injury," rather than alleging that the product she purchased did not perform as advertised or that she was harmed by consuming the product. ECF No. 99 at 14;

ECF No. 103 at 14.  Hi-Tech mischaracterizes what is required for standing here.

The Ninth Circuit—in reversing a case cited by Hi-Tech and on the same grounds for which Hi-Tech cited the case—has recently reiterated that the requirements for standing in an economic injury case are simple.  In *Bowen v. Energizer Holdings, Inc.*, the court rejected the district court's characterization that the plaintiff needed to prove that the product she purchased was unsafe.  No. 23-55116, 2024 WL 4352496, at *9 (9th Cir. Oct. 1, 2024).  The court explained that the plaintiff "need prove only that she paid more for [the product] than [she] otherwise would have paid, or bought it when [she] otherwise would not have done so, absent Defendants' false representations—or actionable non-disclosures—about [the product]." *Id.* (internal quotation marks omitted) (internal citations omitted).

Here, Ottesen pleads exactly that—she spent money on Hi-Tech supplements that, absent Hi-Tech's misrepresentations about the legality and safety of DMHA, she otherwise would not have spent.  *See* FAC ¶¶ 10–12 ("Had Defendant disclosed that the Supplements are unsafe and illegal, Ms. Ottesen would have been aware of that and would not have purchased the Supplements.").  This is a concrete injury sufficient to confer standing.  *See Maya*, 658 F.3d at 1069 (plaintiffs' allegations that "they would not have purchased their homes had defendants made the disclosures allegedly required by law" constituted "actual and concrete economic injuries.").[4]

The Court also rejects Hi-Tech's argument that even if the publication of the Website Update in 2023 made DMHA "illegal," this did not occur until *after* Ottesen had already made her purchase.  ECF No. 103 at 15.  This argument misconstrues Ottesen's theory of liability and the economic injury she has suffered.  Ottesen alleges that Hi-Tech is liable for selling supplements

---

[4] The cases cited by Hi-Tech are inapposite and do not require a different conclusion. *See, e.g., Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009), *aff'd*, 382 F. App'x 545 (9th Cir. 2010) (involving a claim of economic injury where the plaintiff did not allege any kind of intentional deception and where the product in question was not categorically unsafe); *Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022–23 (S.D. Cal. 2013) (finding that the plaintiff did not "allege[] an injury premised on economic loss due to misleading information" because she failed to allege "any advertising or wording on the product that may have mislead" her).

1    containing DMHA because Hi-Tech has omitted information about the dangers associated with

2    DMHA, misbranded its products as dietary supplements rather than as containing an unsafe food

3    additive, and sold a defective product.  None of these theories of liability hinge on the FDA's 2023

4    website update.  Hi-Tech's comparison of this case to *Backus v. Biscomerica Corp.*, 378 F. Supp.

5    3d 849 (N.D. Cal. 2019) is thus unpersuasive.  Unlike in *Backus*, the FDA has never recognized

6    DMHA as safe and has instead asserted that there is no consensus that DMHAs are generally

7    recognized as safe.  *Cf. Backus*, 378 F. Supp. 3d at 851–54 (explaining that the FDA had

8    recognized the ingredient at issue as safe for many years until it issued a determination finding

9    otherwise and which implemented a three-year compliance period where products containing that

10    ingredient would still not be considered adulterated).  There is accordingly no retroactivity issue.

### 1.    Nationwide Class

12    Hi-Tech asks the Court to dismiss Ottesen's nationwide class claims because Ottesen lacks

13    standing to bring claims under the substantive law of states in which she is not a citizen and was

14    not injured.  This Court has previously found that determinations of nationwide class standing

15    should be deferred until class certification.  *See, e.g.*, *Miller v. Nature's Path Foods, Inc.*, No. 23-

16    CV-05711-JST, 2024 WL 4177940, at *9 (N.D. Cal. Sept. 11, 2024); *In re Natera Prenatal*

17    *Testing Litig.*, 664 F. Supp. 3d 995, 1013–14 (N.D. Cal. 2023).  In *Melendres v. Arpaio*, 784 F.3d

18    1254 (9th Cir. 2015), the Ninth Circuit adopted the "class certification approach" to such standing

19    issues, holding "that once the named plaintiff demonstrates her individual standing to bring a

20    claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule

21    23(a) prerequisites for class certification have been met."  784 F.3d at 1261–62.  "Although

22    *Melendres* 'involved a dissimilarity in injuries suffered,' while this case involves named plaintiffs

23    bringing legal claims pursuant to state laws for states they did not reside in, 'the distinction is not

24    material for purposes of taking the class certification approach.'"  *Hrapoff v. Hisamitsu Am., Inc.*,

25    No. 21-cv-01943-JST, 2022 WL 2168076, at *2 (N.D. Cal. June 16, 2022) (quoting *Pecanha v.*

26    *Hain Celestial Grp., Inc.*, No. 17-cv-04517-EMC, 2018 WL 534299, at *9 (N.D. Cal. Jan. 24,

27    2018)).  Accordingly, the Court will not dismiss the nationwide class allegations at this stage.

28

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1

2.    **Injunctive Relief**

2       Hi-Tech also argues that Ottesen lacks standing to obtain an injunction because she has not

3    alleged that she will suffer any "actual and imminent" future harm.  ECF No. 99 at 17.  Ottesen

4    provides only a brief response in her opposition, arguing that "absent injunctive relief 'Defendant

5    will continue to manufacture and sell its Supplements without disclosing that they are illegal and

6    not generally recognized as safe.'" ECF No. 102 at 18–19 (quoting FAC ¶¶100, 103).  But Ottesen

7    fails to explain how Hi-Tech's continued manufacturing and sale of its Supplements will lead to

8    *her* suffering of any "actual and imminent" future harm.

9       The Ninth Circuit has recognized that a "previously deceived consumer may have standing

10   to seek an injunction against false advertising or labeling, even though the consumer now knows

11   or suspects that the advertising was false."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969

12   (9th Cir. 2018).  This is because "[k]nowledge that the advertisement or label was false in the past

13   does not equate to knowledge that it will remain false in the future" and "the threat of future harm

14   may be the consumer's plausible allegations that she will be unable to rely on the product's

15   advertising or labeling in the future, and so will not purchase the products although she would like

16   to." *Id.* at 969–70.  *See also Lilly v. Jamba Juice Co.*, No. 13–CV–02998–JST, 2015 WL 1248027,

17   at *5 (N.D. Cal. Mar. 18, 2015) (noting that "injunctive relief enables the Plaintiffs and other

18   consumers to have confidence that the information they receive about the challenged products at

19   the time of purchase is accurate").

20      Here, however, Ottesen does not allege that she would like to continue buying Hi-Tech's

21   Supplements in the future.  Indeed, the crux of her claims is that the fundamental formulation of

22   Hi-Tech's Supplements is illegal and unsafe and that had she known the Supplements contained

23   an unsafe stimulant, she would not have purchased the Supplements.  *See* FAC ¶ 10 ("Ms. Ottesen

24   purchased and used Defendant's HydroxyElite supplements based on the understanding that the

25   supplements were lawfully sold and did not contain illegal and unsafe stimulants.  Had Defendant

26   disclosed that the Supplements are unsafe and illegal, Ms. Ottesen would have been aware of that

27   and would not have purchased the Supplements.").  The Court cannot interpret Ottesen's

28   allegations to mean that she would purchase the Supplements if they were not misleadingly

15

1    labeled, i.e., labeled as "unsafe food additives" rather than "dietary supplements."  *See Gatling-*

2    *Lee v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST, 2023 WL 11113888, at *5 (N.D. Cal. Mar.

3    28, 2023), *reconsideration denied sub nom. Nacarino v. Del Monte Foods, Inc.*, No. 22-CV-

4    00892-JST, 2024 WL 847925 (N.D. Cal. Feb. 28, 2024).  Accordingly, the Court dismisses

5    Ottesen's request for injunctive relief.

6                        **3.    Supplements Not Purchased**

7            Finally, Hi-Tech argues that Ottesen lacks standing to sue for supplements she did not

8    purchase.  ECF No. 99 at 17.  But as this Court has previously explained, "analyzing the

9    'sufficient similarity' of the products is not a standing inquiry, but rather an early analysis of the

10   typicality, adequacy, and commonality requirements of Rule 23."  *Clancy v. Bromley Tea Co.*, 308

11   F.R.D. 564, 571 (N.D. Cal. 2013); *see also Moore v. EO Prods., LLC*, No. 22-cv-07618, 2023 WL

12   6391480, at *4 (N.D. Cal. Sept. 29, 2023) ("After *Melendres*, this Court and others in this district

13   have applied the class certification approach to whether class representatives may represent a class

14   of individuals who purchased different products from the class representatives.").  Accordingly, "it

15   is premature to consider [Ottesen's] ability to represent a class who purchased different products

16   than [she] did."  *Dailey v. A&W Concentrate Co.*, 519 F. Supp. 3d 668, 672 (N.D. Cal. 2021)

17   (citing *Clancy*, 308 F.R.D. at 569–71).

18                   **E.    Failure to State a Claim**

19           Federal Rule of Civil Procedure 9(b) requires a party "alleging fraud or mistake" to "state

20   with particularity the circumstances constituting fraud or mistake," but allows "[m]alice, intent,

21   knowledge, and other conditions of a person's mind" to "be alleged generally."  Fed. R. Civ. P.

22   9(b). The pleading of a claim "as a whole must satisfy the particularity requirement of Rule 9(b)"

23   where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that

24   course of conduct as the basis of a claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103

25   (9th Cir. 2003).  Because "the Federal Rules of Civil Procedure apply in federal court[ ]

26   'irrespective of the source of subject matter jurisdiction, and irrespective of whether the

27   substantive law at issue is state or federal,'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

28   Cir. 2009) (quoting *Vess*, 317 F.3d at 1102), courts have consistently applied Rule 9(b)'s

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1    heightened pleading requirements to claims arising under the UCL and CLRA, as well as claims

2    for fraudulent misrepresentation, fraud by omission, and unjust enrichment.  *E.g., Opperman v.*

3    *Path, Inc.*, 84 F. Supp. 3d 962 (N.D. Cal. 2015) (applying Rule 9(b) to claims under the UCL and

4    CLRA); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) (applying Rule 9(b) to

5    claims under the UCL and CLRA, and unjust enrichment); *Scherer v. FCA US, LLC*, 565 F. Supp.

6    3d 1184 (S.D. Cal. 2021) (applying Rule 9(b) to fraud by omission claim).

7         Most of Ottesen's claims—including her UCL unfair conduct claims, UCL unlawful

8    conduct claims predicated on violations of the CLRA and the Sherman Law, and unjust

9    enrichment claim—are based on a single course of conduct: Ottesen's allegedly fraudulent

10   omissions regarding DMHA's safety and legality.[5]  Such claims sound in fraud and must satisfy

11   Rule 9(b).  Ottesen also alleges that Hi-Tech violated the implied warranty of merchantability by

12   selling defective consumer goods.  This warranty claim does not rely on Hi-Tech's fraudulent

13   omissions, so the claim does not sound in fraud.

14              **1.    Fraud-Based Claims**

15        Hi-Tech argues that Ottesen has failed to state her fraud-based claims with particularity.

16   Ottesen pleads claims for violations of California's CLRA and UCL, as well as common law

17   fraud, on a theory of fraud by omission.  Claims based on a fraud by omission theory are subject to

18   a lower pleading standard than those based on affirmative misrepresentations, as "'a plaintiff in a

19   fraud by omission suit will not be able to specify the time, place, and specific content of an

20   omission as precisely as would a plaintiff in a false representation claim,' and such a claim 'will

21   not be dismissed purely for failure to precisely state the time and place of the fraudulent

22   conduct.'"  *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 817 (N.D. Cal. 2019) (quoting

23   *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007)).

24   ───────────────

25   [5] Ottesen alleges that Hi-Tech violated the unfair prong of the UCL by making misrepresentations
     about the legality and safety of the Supplements and engaging in "conduct [that] is substantially
26   injurious to consumers, offends public policy, and is immoral, unethical, oppressive and
     unscrupulous as the gravity of the conduct outweighs any alleged benefits."  FAC ¶ 108.  Plaintiffs
27   further allege that Hi-Tech violated the unlawful prong of the UCL based on predicate violations
     of the CLRA and the Sherman Food, Drug, and Cosmetic Law, California Health and Safety Code
28   §§ 109875, *et seq.*, which prohibits the sale of misbranded and/or adulterated food and drugs.
     FAC ¶¶ 103–07.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### i.    Actionable Omissions

Under California law, "to be actionable[,] the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars*, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis omitted) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006)). In *Hodsdon*, the Ninth Circuit explained that a plaintiff sufficiently pleads a duty to disclose where: (1) the plaintiff alleges the omission was material; (2) the alleged defect was central to the product's function; and (3) the defendant (a) is plaintiff's fiduciary, (b) has "exclusive knowledge" of material facts, (c) "actively conceals" a material fact, or (d) makes misleading partial representations. *Id.* at 863 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)). "The last *Limandri* factor is applicable to a partial, not pure, omission claim." *Anderson*, 500 F. Supp. 3d at 1014.

Here, Ottesen alleges that the material omission is that "the Supplements contain an illegal and unsafe ingredient." ECF No. 102 at 21; *see also* FAC ¶ 2 ("Defendant is breaking the law by manufacturing and distributing supplements containing the stimulant DMHA and failing to disclose that they contain an ingredient that is illegal and not generally recognized as safe."). Hi-Tech argues that Ottesen fails sufficiently to allege that Hi-Tech owed her any duty to disclose the omitted facts. ECF No. 99 at 23. Ottesen responds that Hi-Tech had a duty to disclose under the last three *LiMandri* factors—Hi-Tech had exclusive knowledge of the omitted facts; Hi-Tech actively concealed the omitted facts; and Hi-Tech made misleading partial representations. ECF No. 102 at 25.[6]

Under California law, a defendant has exclusive knowledge of material facts giving rise to a duty to disclose where "according to the complaint, [defendant] knew of [a] defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 256 (2011). Courts have not applied the "exclusive knowledge" requirement "with rigidity." *Czuchaj v. Conair Corp.*, No. 13-CV-1901, 2014 WL 1664235, at *4 (S.D. Cal. Apr. 18, 2014) (collecting cases). "The defendant need not

---

[6] Because the Court finds that Ottesen alleges a duty to disclose under the "exclusive knowledge" factor, the Court does not address the remaining *LiMandri* factors.

1    have literally been the sole holder of the knowledge.  It is generally sufficient for defendants to

2    have had 'superior knowledge' and for the information to have not been reasonably discoverable

3    by the plaintiffs." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1014–15 (N.D. Cal. 2020).  This

4    means "even the presence of the information from publicly available sources—for instance,

5    online—does not automatically foreclose an exclusive-knowledge claim." *Id.*  "Instead, courts

6    have looked to the nature of the product, the nature of the alleged omission, and the difficulty in

7    reasonably finding the omitted information from sources other than the defendant." *Edwards v.*

8    *FCA US LLC*, No. 22-CV-01871-WHO, 2022 WL 1814144, at *3 (N.D. Cal. June 2, 2022) (citing

9    *Anderson*, 500 F. Supp. 3d at 1015).

10           Hi-Tech argues that because the information regarding DMHA's safety and legality was

11   contained in the warning letter that the FDA sent Hi-Tech and in the FDA website update, that

12   information cannot be considered the "exclusive knowledge" of Hi-Tech.  ECF No. 103.  But

13   Ottesen alleges that she purchased the Supplements "in or around late 2018," *before* the FDA sent

14   its warning letter on April 10, 2019, and updated its website in 2023.  FAC ¶ 10.  Ottesen thus

15   could not have relied on the information published by the FDA.  Moreover, given that the alleged

16   defect cannot be discoverable from mere inspection and involves scientifically complex

17   classifications, the FDA's publications do not change the fact that Hi-Tech has "superior

18   knowledge" compared to Ottesen regarding the omitted safety information.  Ottesen has thus

19   adequately alleged that Hi-Tech owes a duty to disclose the omitted information regarding

20   DMHA's legality and safety.

21                              ii.        **Deceptive Omissions**

22          Whether the alleged omissions are deceptive under the UCL and CLRA is governed by the

23   "reasonable consumer" test.  *Williams*, 552 F.3d at 938 ("[U]nless the advertisement targets a

24   particular disadvantaged or vulnerable group, it is judged by the effect it would have on a

25   reasonable consumer.") (quoting *Lavie*, 105 Cal. App. 4th at 506–07).  "Under the reasonable

26   consumer standard, [a plaintiff] must 'show that "members of the public are likely to be

27   deceived"'" by the product label.  *Id.* (quoting *Freeman v. Time*, 68 F.3d 285, 289 (9th Cir.

28   1995)).  "[W]hether a business practice is deceptive will usually be a question of fact not

United States District Court
Northern District of California

1    appropriate for decision on demurrer." *Id.* Courts grant motions to dismiss on this ground

2    only where the "the [label] itself [makes] it impossible for the plaintiff to prove that a reasonable

3    consumer [is] likely to be deceived," *Williams*, 552 F.3d at 939, or where the facts alleged

4    otherwise "compel the conclusion as a matter of law that consumers are not likely to be

5    deceived," *Chapman*, 220 Cal. App. 4th at 226–27.

6         Hi-Tech argues that Ottesen cannot meet the reasonable consumer test because she

7    challenges the labeling of the Supplements as "dietary supplements," which is merely a truthful

8    description of the products. ECF No. 99 at 22–23. But Ottesen's entire contention is that Hi-Tech

9    has violated the law by mislabeling its products as "dietary supplements" when they actually

10   contain "unsafe food additives." Ottesen alleges that by not disclosing that DMHA is illegal and

11   unsafe, Hi-Tech deceives reasonable consumers into buying its products. These allegations

12   require determinations of fact. The Court thus rejects Hi-Tech's argument because the motion to

13   dismiss stage is not the appropriate place to resolve disputes of fact.

14                          **iii.    Common-law Fraud**

15        The parties agree that the elements of fraud under California law are: (1)

16   misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable

17   reliance; and (5) resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

18        The Court finds that Ottesen has pleaded the five elements of her fraud claim with

19   sufficient particularity. First, she identifies the misrepresentation to be a material omission—that

20   the Supplements contain an illegal and unsafe ingredient. FAC ¶ 2. Second, she alleges that Hi-

21   Tech had knowledge that DMHA was unsafe by detailing, among other things, the prior litigation

22   and controversies involving Hi-Tech's use of the chemically similar ingredient DMAA. *See id.*

23   ¶¶ 22–46. Third, she alleges that Hi-Tech intentionally concealed the fact that DMHA was unsafe

24   to avoid the controversies Hi-Tech already had with its supplements containing DMAA. *See id.* ¶

25   19 ("Each of the Supplements were originally manufactured with DMAA. However, after the

26   FDA's ban on DMAA, Hi-Tech simply reformulated the Supplements with DMHA in an attempt

27   to stay one step ahead of the proverbial sheriff.").

28        Fourth, the first amended complaint alleges that, "[h]ad Defendant disclosed that the

*United States District Court*
*Northern District of California*

20

1    Supplements are unsafe and illegal, Ms. Ottesen would have been aware of that and would not

2    have purchased the Supplements."  FAC ¶ 10.  This allegation is sufficient to plead reliance for

3    pure omission claims.  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("A

4    plaintiff may [prove reliance on an omission] by simply proving 'that, had the omitted information

5    been disclosed, one would have been aware of it and behaved differently.'") (quoting *Mirkin v.*

6    *Wasserman*, 5 Cal. 4th 1082, 1093, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993)).  Fifth, Ottesen

7    alleges that she was injured because she "paid an unwarranted amount" for the unsafe and illegal

8    products.  FAC ¶¶ 69–70.

9             **2.      UCL Claims**

10           California's UCL "prohibits any unfair competition, which means 'any unlawful, unfair or

11   fraudulent business act or practice.'"  *In re Pomona Valley Med. Grp.*, 476 F.3d 665, 674 (9th Cir.

12   2007) (quoting Cal. Bus. & Prof. Code § 17200 *et seq.*).  "Each of the three 'prongs' under the

13   UCL – (1) unlawful, (2) unfair, and (3) fraudulent – creates an independent theory of liability."

14   *Regueiro v. FCA US, LLC*, 671 F. Supp. 3d 1085, 1096 (C.D. Cal. 2023) (citation omitted).  The

15   UCL's coverage is "sweeping," and its standard for wrongful business conduct is "intentionally

16   broad."  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006).

17           A plaintiff may bring a claim under the fraudulent prong of the UCL if the defendant's

18   conduct is "likely to deceive members of the public."  *Morgan v. AT&T Wireless Servs., Inc.*, 177

19   Cal. App. 4th 1235, 1255 (2009).  In addition, a plaintiff must allege the existence of a duty to

20   disclose, *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007), as well as

21   reliance, *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009).  In its discussion of fraud-based

22   claims, the Court found that the complaint adequately alleges actionable deception, a duty to

23   disclose, and reliance.  Ottesen has thus stated a claim under the fraudulent prong of the UCL.

24           Next, Ottesen's "unlawful" claim under the UCL relies upon violations of the FDCA and

25   California's Sherman Law.  Hi-Tech does not argue that Ottesen has failed to state a claim under

26   this prong of the UCL.  The Court thus finds that the allegations in the complaint sufficiently state

27   a claim for relief under the "unlawful" prong of the UCL.

28           Finally, "[u]nder the UCL's unfairness prong, courts consider either: (1) whether the

United States District Court
Northern District of California

challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (internal quotation marks and citations omitted). The parties' briefs focus only on the first test, which is sometimes called the "tethering test," and the last one, which is sometimes called the "balancing test." ECF No. 99 at 23–24; ECF No. 102 at 26–27. Here, because the Court has already found that Ottesen adequately alleges conduct that is misleading and fraudulent, the same conduct also meets either of the applicable 'unfair' standards both as conduct that inflicts harm to consumers without any justifiable utility and conduct that "violates a particular public policy—prohibitions against fraud" under the Sherman Law. *See Hilario v. Allstate Ins. Co.*, No. 20-cv-05459-WHO, 2020 WL 7643233, at *9 (N.D. Cal. Dec. 23, 2020).

### 3.    Unjust Enrichment

Hi-Tech argues that unjust enrichment is not a cause of action under California law. While California case law on this issue could be clearer,[7] the Ninth Circuit "has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). "[Hi-Tech] is therefore incorrect that the unjust enrichment claim should be dismissed solely on the ground that no such claim is cognizable under California law."

---

[7] "There is no cause of action in California labeled 'unjust enrichment.'" *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477 (2022) (citation omitted). "But '[c]ommon law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'" *Id.* (quoting *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011)). *See also Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998, 353 P.3d 319, 326 (2015) ("An individual who has been unjustly enriched at the expense of another may be required to make restitution. Where the doctrine applies, the law implies a restitutionary obligation, even if no contract between the parties itself expresses or implies such a duty. Though this restitutionary obligation is often described as quasi-contractual, a privity of relationship between the parties is not necessarily required." (citations omitted)).

United States District Court
Northern District of California

1    *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1120 (N.D. Cal. 2021)

2    (quotation marks and citation omitted).

3         Hi-Tech further argues that Ottesen's unjust enrichment claim fails because she has not

4    pleaded with particularity an actionable misrepresentation or omission.  ECF No. 103 at 22.  As

5    the Court has already found that Ottesen adequately pleaded an actionable omission, Ottesen has

6    sufficiently stated an unjust enrichment claim.

7                          **4.     Implied Warranty of Merchantability**

8         Hi-Tech argues that Ottesen's claim for breach of the implied warranty of merchantability

9    fails because she does not adequately allege privity with Hi-Tech.  To assert a claim for breach of

10   the implied warranty, a plaintiff generally must "stand in vertical contractual privity with the

11   defendant.  A buyer and seller stand in privity if they are in adjoining links of the distribution

12   chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citation

13   omitted).  Therefore, an "end consumer . . . who buys from a retailer is not in privity with a

14   manufacturer." *Id.*  But certain exceptions to the privity rule exist, including the "foodstuffs"

15   exception, "where it is held that an implied warranty of fitness for human consumption runs from

16   the manufacturer to the ultimate consumer regardless of privity of contract." *Burr v. Sherwin*

17   *Williams Co.*, 42 Cal. 2d 682, 695 (1954); *see also Vaccarezza v. Sanguinetti*, 71 Cal. App. 2d

18   687, 689 (1945) ("The warranty applies to the sale of foodstuffs for human consumption, and runs

19   with the goods to the ultimate consumer, there being no requirement of privity between the

20   ultimate consumer and manufacturer.").  Here, the Supplements qualify as "foodstuffs," as they

21   are intended for human consumption.  *See Arnold v. Dow Chem. Co.*, 91 Cal. App. 4th 698, 720

22   (2001) ("An exception to the general rule [requiring privity] has been recognized in the case of

23   foodstuffs, and has been extended to drugs, on the basis that a drug is intended for human

24   consumption quite as much as is food.").

25        Hi-Tech contends that the foodstuffs exception should be interpreted narrowly and that

26   Ottesen should be required to allege a physical injury to state a claim under the foodstuffs

27   exception.  ECF No. 103 at 22 (citing *Nadler v. Nature's Way Prods., LLC*, 2014 WL 12601567,

28   at *3 (C.D. Cal. Mar. 27, 2014)).  The Court, however, agrees with the several other courts that

United States District Court
Northern District of California

have found that "the foodstuffs exception applies even to purely economic harms." *See, e.g.*, *Bland v. Sequel Nat. Ltd.*, No. 18-CV-04767-RS, 2019 WL 4674337, at *3 (N.D. Cal. Aug. 2, 2019) (collecting cases).  The foodstuffs exception is "designed to protect consumers from adulterated food items that pose a risk to human health, and not merely to ensure a remedy for those consumers who have suffered a physical injury because of that risk." *Musgrave v. Taylor Farms Pac., Inc.*, No. 18-CV-02841-JSW, 2019 WL 8230850, at *4–5 (N.D. Cal. Feb. 20, 2019). Accordingly, the Court finds that the foodstuffs exception applies here, and Ottesen has adequately pleaded a claim that Hi-Tech breached the implied warranty of merchantability.

## CONCLUSION

The Court dismisses Allen and Accardi's claims on behalf of themselves and a New York subclass for lack of jurisdiction.  The Court further dismisses Ottesen's request for injunctive relief.  The remainder of Hi-Tech's motion to dismiss is denied.  Ottesen may file an amended complaint, solely to correct the deficiencies identified above, within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated:  December 23, 2024



_____
JON S. TIGAR
United States District Judge